**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------×

PATRICIA JO,

                  *Plaintiff,*

        *v.*

STUDIO 1872 INC., LISA VERSACIO, KIM LEE,
SAMANTHA MCDONOUGH, and DEVON
MCDONOUGH,

                  *Defendants.*

-------------------------------------------------------------------------×

**20-CV-04176**

**COMPLAINT**

       Plaintiff Patricia Jo, by her counsel, Young & Ma LLP, alleges for her Complaint against

Defendants Studio 1872 Inc., Lisa Versacio, Kim Lee, Samantha McDonough, and Devon

McDonough, as follows:

**PRELIMINARY STATEMENT**

       1.      Plaintiff Patricia Jo ("Plaintiff" or "Patricia") seeks damages and costs against

Defendants Studio 1872 Inc. ("Studio 1872" or the "Company"), Lisa Versacio ("Lisa"), Kim

Lee ("Kim"), Samantha McDonough ("Samantha"), and Devon McDonough ("Devon")

(collectively, "Defendants") for discriminating against her based on her national origin/race, and

among other things, subjecting her to a hostile work environment and ultimately terminating her

from her employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e *et seq.* ("Title VII"), § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42

U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et*

*seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et*

*seq.*

## JURISDICTION AND VENUE

2.	Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII and Section 1981.

3.	Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about March 25, 2020.

4.	The EEOC issued a Right to Sue Letter on April 6, 2020, which was received by Plaintiff's counsel on April 9, 2020.

5.	Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims as they are so related to the Title VII and Section 1981 claims that they form part of the same case or controversy.

6.	Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

7.	Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

8.	Upon information and belief, at all times relevant hereto, Defendant Studio 1872 Inc. was and is a foreign business corporation organized under the laws of the State of Delaware, doing business in New York as a lifestyle and fashion company with a retail store located at 1/2 Bond Street, 2nd Floor, New York, NY 10012.

9.	Upon information and belief, Defendant Lisa Versacio is an individual residing in New York and is the founder of the Company.

10.     Upon information and belief, Defendant Kim Lee is an individual residing in California and works for the Company in New York during the business week.

11.     Upon information and belief, Defendant Samantha McDonough is an individual residing in New York and works for the Company.

12.     Upon information and belief, Defendant Devon McDonough is an individual residing in New York and works for the Company.

**STATEMENT OF FACTS**

13.     Patricia has significant experience in e-commerce, having worked at companies like Net-A-Porter.Com and Caroline Constas LLC.  She has eight years of fashion experience in in reputable New York institutions and is a graduate of Duke University and Parsons School of Design.

14.     Patricia is a Korean American woman who is multilingual (fluent in Korean and conversational in Spanish).

15.     Defendant Studio 1872 Inc. is a lifestyle and fashion company with a retail store located at 1/2 Bond Street, 2nd Floor, New York, NY 10012.

16.     Defendant Lisa Versacio is the founder of the company and a White woman.

17.     Defendant Kim Lee is a director/manager in the Company who handled Human Resources matters.

18.     Defendant Samantha McDonaugh is the niece of Defendant Versacio and worked in the Company during the relevant times of Patricia's employment when she experienced discrimination.

19. Defendant Devon McDonaugh is the niece of Defendant Versacio and worked in the Company during the relevant times of Patricia's employment when she experienced discrimination.

20. At Studio 1872, Patricia served as a Senior E-Commerce manager overseeing the e-commerce business day to day, tracking sales, planning seasonal uploads, and monitoring site traffic; playing a key leadership role in building out the web functionalities and launching the site successfully by set deadlines; collaborating with the merchandising team to ensure product offering in each department to support plans; analyzing website metrics to plan growth, ensuring CRO, and identifying key opportunities and site enhancements; and liaising with third party email marketing and PR teams to ensure strategic brand exposure and promotion on social platforms.

21. Within two months of Patricia's employment with the Company, around May 2019 (prior to internal discrimination complaints she made), both Defendant Kim and Defendant Lisa applauded her for the launch of the e-commerce site, which she had worked on for two weeks straight, twelve hours a day. The entire Company recognized Patricia's advanced technical skills.

22. Having a functioning e-commerce site dramatically increased the Company's traffic and reach.

23. After Patricia raised complaints concerning blatant discrimination, she suffered a set of strategic discriminatory and retaliatory steps, managing her out of the Company.

24. Patricia is a Korean-American woman who is proud of her heritage and culture. She did not and does not wish to conform to a company's "brand image" rooted in discriminatory practices favoring only white skin, blond hair, and blue eyes. However, since her

role was focused online, she did not think that this culture of discrimination would affect her. Additionally, Patricia had no problem working in a company with all White/blonde women if it were an equal opportunity company (which Patricia learned Defendants are not). But, when she finally stood up for herself against the racist and discriminatory practices at the Company, she received false performance reviews, immediately leading to her termination.

25. The Company only had Caucasian employees at the location where Patricia worked (and many were blonde and/or blue eyed). The White employees that worked alongside Patricia were Defendant Lisa, Defendant Kim, Laura Hubbell ("Laura"), Megan Marine ("Megan"), Michelle Seleneski ("Michelle"), Defendant Devon, Defendant Samantha, and Kayla. For a very short period of time, a Latina employee Beatrice Rojas ("Beatrice") was hired as a store manager, and she confided in Patricia that Defendant Lisa and Defendant Kim would not allow Beatrice to hire anyone that was black/curly haired (i.e. Black or minority) because it hurt the "brand image". Beatrice was terminated for hiring store employees that had darker colored skin or were non-White.

26. Defendant Lisa would openly make fun of Asian foods and smells. She regularly said, "***I can't believe people who eat sushi***" and "***sushi is disgusting***", and did not like if Patricia or anyone ate pho (a Vietnamese noodle soup) or any other Asian foods. Defendant Lisa expressed publicly that only pizza, pasta or Caesar salads were acceptable items to have for lunch. When Defendant Kim and Laura did order pho, sushi or other Asian foods, Defendant Lisa (and sometimes her nieces) made uncomfortable comments about Asian food smells where Patricia could hear the comments.

27. In July 2019, for no reason, Defendant Lisa and management placed Patricia's desk behind a fake wall (right after she did an excellent job on a launch). This was in a back

dark corner while all the White female employees sat by the window in the light and in a group. While all employees had Defendant Lisa's phone number to be in direct communication, Patricia was the only employee allowed to talk to her only through Defendant Kim. Even junior White employees were directly texting/calling Defendant Lisa.

28. Patricia was also the only employee who was not provided office keys and had to wait for someone else to unlock the doors in the morning (and Patricia tended to arrive earlier than others so she was always waiting). In the very rare cases that she was late, she was heavily criticized even though she was not the person responsible for opening the door. When others were late and hence Patricia was waiting outside, and even when they were late more often and for longer periods than Patricia, it was completely acceptable.

29. The Company also caters to a particular customer, evident by their offering of only two shades of concealers with very light shades.

30. When Francesca, who is a sister/family member to employees Defendant Devon and Defendant Samantha (who themselves are nieces of Defendant Lisa), showed up with a tan, Defendant Kim joked, "oh look, I guess now we are adding diversity!" This was an obvious joke about there being no diversity in the Company. This was extremely unprofessional as Defendant Kim handled many of the Human Resources matters and created a further hostile work environment for Patricia, who is clearly a Korean-American woman. When Defendant Kim made this joke, the entire office laughed and/or were forced to laugh. But the male photographers Levi Miller and his assistant Adam looked very uncomfortable at this racist comment coming from senior management/HR.

31. As discussed, Defendant Samantha and Defendant Devon were nieces of Defendant Lisa, all of whom work in the Company. On October 8, Defendant Samantha said to

Defendant Devon, "***Keep your hair blonde … not like Patricia's***," and "***You would never want your hair color to look like Patricia's***."  Patricia was not a party to the conversation and it was not said in any inviting tone to invite Patricia into the conversation.  Clearly Patricia's hair color is not blonde and she could not understand why it was necessary to use her as a comparative when discussing allegedly desirable hair color.  As reference, Defendant Samantha and Defendant Devon had dyed blonde hair to appear even more White and to fit the "image" of the Company.

32. Megan Marine heard about this exchange directly afterwards and remarked that this conversation was totally unacceptable.  She suggested that Patricia report the incident to Defendant Kim.

33. Patricia immediately reported the incident to Defendant Kim, who immediately questioned her understanding of the comment and the context, defending Defendant Samantha (the niece of her boss).  This is exactly how the rest of the "investigation" was handled.  Patricia asked to meet with Defendant Lisa on October 9 and was ignored.  On October 10, a meeting was scheduled but then rescheduled to October 11.

34. On October 10, Defendant Kim emailed Beatrice (the Latina store manager) and Patricia (Plaintiff, the Asian e-commerce manager) that the trash needed to be taken out.  This email was sent to the only two minorities in the Company, instead of interns or administrative staff.  Michelle Seleneski, a White intern with less experience than both Beatrice and Patricia, witnessed this and was specifically not asked to take out the trash.  Also, notably the email said "Laura" always does the trash but it's not her job.  However, Laura Hubbell's role is executive assistant/office manager while Patricia was Senior E-Commerce Manager with a Duke and Parsons degree and relevant experience and Beatrice is a store manager.  It was obvious that a

White woman taking out the trash was offensive to senior management in the Company when minority employees worked there (even if that job was more fitting for the White woman's title). Even if the true intent was to alleviate Laura's responsibilities, that email was not sent company wide to all White employees who had more junior roles or in general. It was clear the minority employees should know their place and take out trash.

35. On October 11, Patricia spoke at length with Defendant Lisa and Defendant Kim about what happened on October 8. Defendant Lisa became defensive as to whether Patricia heard correctly or only heard parts of a "bigger" conversation. Patricia reiterated that in a general conversation about hair color, there was no reason to reference her name or hair color. The tone of the comments was not inviting but was meant to be demeaning. In fact, Defendant Samantha had to avoid eye contact with Patricia once she saw Patricia heard her, proving the comment was meant to be disparaging. Neither young woman made any effort to apologize, and neither did senior management, for the obvious hostile work environment created. Defendant Lisa said she had "zero tolerance" for "***things like that***" or discomfort in the workplace. She could not even bring herself to say the word "discrimination" as she does not recognize it could exist in her Company or is an issue in society at all. Defendant Lisa also could not say the word "diversity" or that the Company values diversity. She would not acknowledge that Patricia is one of two minorities in the Company and Patricia should not feel uncomfortable under any circumstances.

36. After this report, Defendant Lisa greatly reduced talking to Patricia and would not even email her directly anymore. It was clear Defendant Lisa wanted Patricia out of the Company but was waiting for a safe period of time before firing her. Defendant Lisa made it a point to talk to Michelle, Megan, Defendant Samantha, Defendant Devon and Kayla more in

Patricia's presence to make her feel isolated. Megan and Michelle continued to talk to Patricia and admitted the environment was made more hostile for her on purpose after the complaint. Defendant Lisa did her best to encourage all the other employees not to speak to or address Patricia.

37. Two weeks later, on October 28, the Company issued a short statement denying discrimination. The report was just a few sentences and completely dismissive, showing that an investigation was not conducted thoroughly. There were absolutely no questions on the bigger issue about whether the workplace was discriminatory or hostile for minority employees outside what Patricia reported. On October 30, Patricia wrote a rebuttal challenging the objectivity and impartial judgment of the investigation. Patricia noted that the person investigating is the aunt of the perpetrator and the most senior manager of the Company. There was no response to Patricia's rebuttal.

38. Right after October 11, the Company started its pre-textual performance complaints against Patricia. Defendant Kim raised Patricia's phone usage in the complaint. Meanwhile, White employees such as Defendant Lisa herself, Defendant Samantha and Defendant Devon used their personal phones much more. Defendant Kim and Defendant Lisa were both constantly on personal calls at work. Defendant Devon and Defendant Samantha also took two-hour lunches, and chatted with one another about family and personal matters constantly during work time in addition to constant usage of their personal phones. These perpetrators of discrimination also rarely got their work done and made many mistakes that were completely overlooked by Defendant Kim and Defendant Lisa. Meanwhile, Patricia's job required her to check mobile site functionalities on her phone. After October 28, Defendant Kim asked Patricia in a hostile manner if she was "happy" working at Studio 1872, pushing her to

resign.  Defendant Kim started to say that Patricia had an "attitude" at work.  However, the only attitude Patricia had ever shown and the only disagreement with management or anyone was when Patricia made a race discrimination complaint where Patricia was rightfully offended. Meanwhile, Defendant Lisa and Defendant Kim have had numerous uncontrolled outbursts at work using profanity.

39.     In December 2019, Defendant Lisa insisted that she had asked Patricia to have Apple Pay enabled on the e-commerce site checkout page many times but Patricia did not do it. However, Apple Pay was enabled in May/June 2019 during Patricia's launch and it was documented in internal emails.

40.     On January 3, 2020, Patricia was terminated with the pre-textual excuse of budget reasons.  On January 2, Patricia had asked to work remotely because her brother was hospitalized and Patricia was in the hospital.  It was also the day after New Year's Day.  On January 2, while Patricia was out in the hospital with her brother, Defendant Kim asked her to put together email campaigns for the entire months of January and February within 2 hours that day.  Over the holidays, Patricia had already captured the Company changing account information and settings, obviously planning to fire her.  At 6 pm on January 2 while Patricia was still in the hospital, Defendant Kim finally said she would speak with Patricia at 8 am the next day for something that would need to be completed by 8:30 am.  When Defendant Kim called at 8:02 am the next morning, she said three sentences and fired Patricia.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**National Origin/Race Discrimination in Violation of Title VII**
**(Against Defendant Studio 1872 Inc.)**

41. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

42. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Studio 1872 Inc.

43. Defendant Studio 1872 Inc. was and is an employer within the meaning of Title VII.

44. At all times relevant to this case, Plaintiff was and is a Korean American woman, and is a member of protected classes within the meaning of Title VII.

45. At all times, Defendant Studio 1872 Inc. was aware of Plaintiff's national origin/race.

46. Defendant Studio 1872 Inc. engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's national origin, race and gender in the manner described in the Statement of Facts.

47. Ultimately, Plaintiff was terminated by Defendant due to her national origin/race.

48. As a direct and proximate result of Defendant Studio 1872 Inc.'s unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, loss of salary, and continued advancement in her career. Plaintiff will also have suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses.

49. As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish and lasting embarrassment and humiliation.

50. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Defendant under Title VII.

**SECOND CAUSE OF ACTION**
**National Origin/Race Discrimination in Violation**
**of New York City Human Rights Law**
**(Against All Defendants)**

51. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

52. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

53. At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

54. At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

55. At all times relevant to this case, Plaintiff was and is a Korean American woman, and is a member of protected classes within the meaning of NYCHRL.

56. At all times, Defendants were aware of Plaintiff's national origin/race.

57. Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's national origin/race in the manner described in the Statement of Facts.

58.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

59.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

60.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

61.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost bonuses; and (vi) attorney's fees and costs.

62.     As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

63.     Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

## THIRD CAUSE OF ACTION
## National Origin/Race Discrimination in Violation
## of New York State Human Rights Law
## (Against All Defendants)

64. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

65. This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

66. At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

67. At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

68. At all times relevant to this case, Plaintiff was and is a Korean American woman, and is a member of protected classes within the meaning of NYSHRL.

69. At all times, Defendants were aware of Plaintiff's national origin/race.

70. Defendants engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's national origin/race in the manner described in the Statement of Facts.

71. Ultimately, Plaintiff was terminated by Defendants due to her national origin/race.

72. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of national origin/race as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

73. Defendants are also individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

74. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

75. Plaintiff's damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

76. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**Wrongful Termination in Violation of Section 1981**
**(Against All Defendants)**

77. Plaintiff repeats and realleges the allegations in the Complaint as if fully set forth herein.

78. Section 1981 prohibits employers from discriminating against an employee on the basis of race.

79. Defendants unlawfully terminated Plaintiff because of her race.

80. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

81. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**FIFTH CAUSE OF ACTION**
**Retaliation and Hostile Work Environment arising under**
**Title VII, NYSHRL, and NYCHRL**
**(Against All Defendants)**

82. Plaintiff repeats and realleges the allegations in the Complaint as if fully set forth herein.

83. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Section(s) 2000e et seq., New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. Sections 290 et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code Sections 8-101 et seq. for relief based upon the unlawful employment practices of the above-named Defendants.

84. Defendants engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL.

85. Plaintiff complained about Defendants' misconduct to the HR department as specifically outlined in the Statement of Material Facts and previous paragraphs.

86. In response to Plaintiff's complaints, Defendants retaliated against her as outlined in detail in the Statement of Material Facts.

87. Defendants contributed to the harassment, hostile work environment and retaliation; was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

88. Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally, state and city protected rights.

89. As a direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, raises and equal compensation. Plaintiff has also suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience, and other non-pecuniary losses.

90. As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, and lasting embarrassment and humiliation.

91. As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

92. Plaintiff's damages include financial loss, loss of employment opportunities, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

93. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, interest, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendant under Title VII, NYSHRL, and NYCHRL.

## JURY DEMAND

94. Plaintiff demands a trial by jury.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e <u>et</u> <u>seq.</u> ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 <u>et</u> <u>seq.</u>; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 <u>et</u> <u>seq.</u>

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendants' unlawful and discriminatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff liquidated damages;

G. Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.

Dated:      New York, New York
June 1, 2020

By: _____

Tiffany Ma, Esq.
Young & Ma LLP
575 Lexington Avenue, 4th Floor
New York, NY 10022
T: (212) 971-9773
F: (212) 600-2301
tma@youngandma.com

*Counsel for Plaintiff Patricia Jo*